# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

I, Jose G. Rodriguez-Aguilar, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with **blockr152@gmail.com** ("the Account") that is stored at premises owned, maintained, controlled, or operated by Google LLC ("Google"), an electronic communications service and/or remote computing service provider headquartered at 1600 Amphitheater Parkway, Mountain View, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2. I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and have been since June 2022. I am currently assigned to the Boston Division, Bangor Resident Agency, of the FBI. As part of my duties, I investigate crimes involving fraud and money laundering. I received training on the proper investigative techniques for these violations, including the use of surveillance techniques, undercover activities, and the application and execution of arrest and search warrants.

3. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Wire Fraud and Bank Fraud, in violation of

Title 18 U.S.C. §§ 1343 and 1344, and violations of Identity Theft, in violation of Title 18 U.S.C. § 1028, have been committed by KYLE POLLAR. There is also probable cause to search the information described in Attachment A for evidence of these crimes further described in Attachment B.

## JURISDICTION

4. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court 'is a district court of the United States ... that has jurisdiction over the offense being investigated". 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE TO BELIEVE THAT A FEDERAL CRIME WAS COMMITTED

5. On or about 10/20/2022, an investigative assessment was initiated based on an IC3.gov[1] complaint filed by Roger T. Block of Stonington, Maine ("Block") on 09/20/2022. Block reported a loss of approximately $400,000 via wire transfers and purchases from Maine Savings Federal Credit Union ("Maine Savings"). Block was subsequently interviewed by law enforcement. He stated that he was on a sailing trip with his wife, Amy Jordan, from Friday, September 2, 2022 until Tuesday, September 13, 2022. Upon returning from his trip, he attempted to log into his Maine Savings account and realized that his login credentials did not work. He contacted the bank via telephone and provided the proper verification credentials to gain access to his account. Block requested the username and password be reset. He was then

---

[1] The Internet Crime Complaint Center, or IC3, is the Nation's central hub for reporting cyber crime. It is run by the FBI, the lead federal agency for investigating cyber crime. See www.ics.gov.

2

able to log into the account successfully. Multiple wire transfers were viewed on his online statement.

6. The transfers appear to have been generated from Block's Home Equity Line of Credit (HELOC) without his knowledge. Block contacted the bank and advised them that he did not authorize any changes or wire transfers to his account. Maine Savings froze Block's account and advised Block that an investigation would be conducted before any restitution of funds would occur.

7. It is believed that the federal crimes committed in this matter are consistent with Title 18 U.S.C. § 1343, Fraud by wire, radio or television, Title 18 U.S.C. § 1344, Bank Fraud, and Title 18 U.S.C. § 1028, Identity Theft.

**PROBABLE CAUSE TO BELIEVE THAT THE ACCOUNTS CONTAIN EVIDENCE, FRUITS, AND INSTRUMENTALITIES**

8. I also have probable cause to believe that the Account and associated data contain evidence, fruits, and instrumentalities of the crimes identified above.

9. Investigation subsequently disclosed that on August 30, 2022, Maine Savings received a telephone call from someone claiming to be Roger Block. This person wanted to check his Maine Savings account balance. This person also updated the contact phone number to 207-598-9649. The same person called back approximately four minutes later to update his email address to blockr152@gmail.com. Over a period of approximately two weeks, several transfers from Block's HELOC to his savings account occurred via telephone. On September 06, 2022, a wire transfer was processed for $98,680.00 and it was transferred to a PNC bank account under account number [redacted] with Kyle Pollar ("Pollar") as the listed recipient. On September 12, 2022, a wire transfer was processed for $97,850.00 and it was transferred to a PNC bank

3

account under account number ▮▮▮▮▮ with Pollar as the listed recipient. On September 15, 2022, a wire transfer was processed for $66,000.00. It was transferred to Tarrytown Jewelers under invoice number 10816 and the items purchased were shipped to the address of 1802 Geary Street, Garland, Texas 75043. The address that the items purchased were shipped to is located approximately 54.1 miles and 1 hour 15 minutes away from Pollar's home address. On September 16, 2022, a wire transfer was processed for $98,350.00 and it was transferred to a PNC bank account under account number ▮▮▮▮▮ with Pollar as the listed recipient. The four wire transfers via telephone were totaled $360,880.00.

10. On or about January 17, 2023, Google LLC was issued a Federal Grand Jury Subpoena by the District of Maine in regard to the account blockr152@gmail.com. On or about January 20, 2023 Google LLC sent back information in response to the subpoena. The information provided from Google LLC regarding the account confirms that the email account was created on August 26, 2022 and last updated on November 10, 2022. Various dates throughout the month of August 2022 and September 2022 were shown as used to log into this account.

11. On January 30, 2023, FBI Staff Operations Specialist Nicole Shelton sent Google LLC a letter requesting under 18 U.S.C. § 2703(f) that the company preserve records associated with the Account for 90 days.

## BACKGROUND CONCERNING GOOGLE[2]

12. Google is a United States company that offers to the public through its Google Accounts a variety of online services, including email, cloud storage, digital payments, and productivity applications, which can be accessed through a web browser or mobile applications. Google also offers to anyone, whether or not they have a Google Account, a free web browser called Google Chrome, a free search engine called Google Search, a free video streaming site called YouTube, a free mapping service called Google Maps, and a free traffic tracking service called Waze. Many of these free services offer additional functionality if the user signs into their Google Account.

13. In addition, Google offers an operating system ("OS") for mobile devices, including cellular phones, known as Android. Google also sells devices, including laptops, mobile phones, tablets, smart speakers, security cameras, and wireless routers. Users of Android and Google devices are prompted to connect their device to a Google Account when they first turn on the device, and a Google Account is required for certain functionalities on these devices.

14. Signing up for a Google Account automatically generates an email address at the domain gmail.com. That email address will be the log-in username for access to the Google Account.

15. Google advertises its services as "One Account. All of Google working for you." Once logged into a Google Account, a user can connect to Google's full suite of services offered

---

[2] The information in this section is based on information published by Google on its public websites, including, but not limited to, the following webpages: the "Google legal policy and products" page available to registered law enforcement at lers.google.com; product pages on support.google.com; or product pages on about.google.com.

5

to the general public, described in further detail below. In addition, Google keeps certain records indicating ownership and usage of the Google Account across services, described further after the description of services below:

    a. **Account Information** – User name, primary e-mail address, secondary e-mail addresses, connected applications and sites, and account activity including account sign in locations, browser information, platform information, and internet protocol (IP) addresses used during the commission of the fraud scheme. Google maintains information about their customers including primary e-mail addresses, secondary e-mail addresses for account password recovery, applications, websites, and services that are allowed to access the user's Google account or use the user's Google account as a password login, and account login activity such as the geographic area the user logged into the account, what type of internet browser and device they were using, and the internet protocol (IP) address they logged in from. The IP address is roughly analogous to a telephone number assigned to a computer by an internet service provider. The IP can be resolved back to a physical address such as a residence or business with Wi-Fi access or residential cable internet. I believe this information will assist in the investigation by identifying previously unknown e-mail accounts and location history information tending to confirm the identity and movements of the suspect, her utilized mobile device, and/or utilized computers.

    b. **Gmail** – Account data contains e-mail messages, such as inbox messages whether read or unread, sent mail, saved drafts, chat histories, and e-mails in the trash folder. Such messages will include all information such as the date, time, internet

6

protocol (IP) address routing information, sender, receiver, subject line, any other parties sent the same electronic mail through the 'cc' (carbon copy) or the 'bcc' (blind carbon copy), the message content or body, and all attached files. Because of the confirmed use of these email addresses in the course of the fraud scheme, I believe that messages and associated data in these accounts will confirm the identities and locations of the participants in the crime under investigation.

c. **Documents** – Google provides online document drafting and management applications, including Docs (a web-based word processing application), Sheets (a web-based spreadsheet program), and Slides (a web-based presentation program.) Documents contained in the Google account can include all files whether created, shared, or downloaded. In this case, the receipt, manipulation, and transmission of documents is part of the identified fraud scheme, and records pertaining to these documents are evidence of the crime under investigation.

d. **Search History** – Google records can also include search history and queries, such as World Wide Web (web), images, news, shopping, ads, videos, maps, travel, and finance. Google retains a user's search history whether it is done from a mobile device or from a traditional computer. This history includes the searched for terms, the date and time of the search, and the user-selected results. Furthermore, the specific type of search a user performed into categories differentiating these searches. These categories include a general web search and specialty searches where the results are focused in a particular group such as images, news, videos, and shopping. I believe a review of the search histories related to the subject accounts would reveal information relevant to the ongoing

criminal investigation by revealing what information the suspect sought and when she sought it, as well as showing knowledge, intent, motive, and absence of mistake of fact.

e. **Contacts** - Contacts stored by Google including name, contact phone numbers, e-mails, social network links, and images. When a user links the Android device to their Google account the names, addresses, phone numbers, e-mail addresses, notes, and pictures associated with the account are transferred to the phone and vice versa. This process is continuously updated so when a contact is added, deleted, or modified using either the Google account or the mobile device the other is simultaneously updated. I believe this information is pertinent to the investigation, as it will assist with identifying previously unknown co-conspirators and/or witnesses, as well as helping to identify communications conducted in furtherance of the scheme.

f. **Google Drive** – Google Drive is used to store documents created using Google Documents, as well as any other files designated by the user. Google Drive makes it easy to locate, share, or transmit user files to other Google users, as well as other internet service users. Google Drive provides free file storage of up to 15 gigabytes for Google account holders. I believe a review of the Google Drives related to the accounts used by the suspect may show the origin of the fraudulent documents used to facilitate this fraud scheme, as well as the knowing use of false documents.

g. **Play Store** – Google operates an online marketplace whereby Google and other third-party vendors offer for sale applications such as games, productivity tools,

8

and social media portals. Many of these applications can be used to communicate outside the cellular service of a mobile device by accessing the internet via Wi-Fi. These various applications facilitate communication via voice using voice over internet protocol (VOIP) technology, short message system (SMS) text messages, multi-media message system (MMS) text messages, audio transmission of recorded messages, and recorded or live video messages. As these services operate independently of the cellular service network there is no corresponding information regarding communications from the cellular provider. Identifying communications applications purchased, downloaded, and/or installed on the mobile device would assist investigators by determining what application provider should be served with additional search warrants. Furthermore, identifying the user's applications would assist investigators with determining banking and other financial institution information and social media sites used. Identifying the purchased or installed applications would assist locating those with potentially criminal implications such as applications that appear to the observer to be a calculator or other innocuous appearing program but in actuality are used to conceal pictures, videos, and other files. These concealment applications are commonly missed during manual and forensic examinations of mobile devices as existing technologies are not designed to detect and locate them and the information they conceal. I believe a review of the Play Store account for the accounts used by the suspect may show the software application that was used to create these fraudulent documents, or potentially communication related to their creation.

9

16.     Google integrates its various services to make it easier for Google Accounts to access the full Google suite of services. For example, users accessing their Google Account through their browser can toggle between Google Services via a toolbar displayed on the top of most Google service pages, including Gmail and Drive. Google Hangout, Meet, and Chat conversations pop up within the same browser window as Gmail. Attachments in Gmail are displayed with a button that allows the user to save the attachment directly to Google Drive. If someone shares a document with a Google Account user in Google Docs, the contact information for that individual will be saved in the user's Google Contacts. And if a user logs into their Google Account on the Chrome browser, their subsequent Chrome browser and Google Search activity is associated with that Google Account, depending on user settings.

17.     When individuals register with Google for a Google Account, Google asks users to provide certain personal identifying information, including the user's full name, telephone number, birthday, and gender. If a user is paying for services, the user must also provide a physical address and means and source of payment.

18.     Google typically retains and can provide certain transactional information about the creation and use of each account on its system. Google captures the date on which the account was created, the length of service, log-in times and durations, the types of services utilized by the Google Account, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via Google's website or using a mobile application), details about the devices used to access the account, and other log files that reflect usage of the account. In addition, Google keeps records of the Internet Protocol ("IP") addresses used to register the account and accept Google's terms of service, as well as the IP addresses associated with particular logins to the account. Because

10

every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the Google Account.

19. Google maintains the communications, files, and associated records for each service used by a Google Account on servers under its control. Even after a user deletes a communication or file from their Google Account, it may continue to be available on Google's servers for a certain period of time.

20. In my training and experience, evidence of who was using a Google account and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion. Locating the origin of these fraudulent files would identify if the subject is operating independently, or if she solicited the assistance of an unknown co-conspirator to create these fraudulent documents.

21. Based on my training and experience, messages, emails, voicemails, photos, videos, documents, and internet searches are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation. Thus, stored communications and files connected to a Google Account may provide direct evidence of the offenses under investigation

22. In addition, the user's account activity, logs, stored electronic communications, and other data retained by Google can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, email and messaging logs,

11

and documents, may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

23. Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (*e.g.,* information indicating a plan to commit a crime), or consciousness of guilt (*e.g.,* deleting account information in an effort to conceal evidence from law enforcement).

24. Other information connected to the use of a Google account may lead to the discovery of additional evidence. For example, the apps downloaded from the Google Play store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. Any application downloaded by the user that provides a service to edit Portable Document Format (PDF) files may reveal the method in which these fraudulent documents were created. In addition, emails, instant messages, Internet activity, and documents can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

25. Therefore, Google's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Google services. In my

12

training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## CONCLUSION

Based on the forgoing, I request that the Court issue the proposed search warrant. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving the warrant on Google. Because the warrant will be served on Google, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

Jose G. Rodriguez-Aguilar
Special Agent
FBI

Sworn to telephonically and signed electronically in accordance with the requirements of Rule 4.1 of the Federal Rules of Criminal Procedure

Date: Mar 02 2023

City and state: Bangor, ME

John C Nivison U.S. Magistrate Judge
Printed name and title

13